Filed 11/19/20  Montgomery v. The Whiskey Barrel Hesperia, LLC CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NICHOLAS MONTGOMERY, | |
| Plaintiff and Appellant, | E071477 |
| v. | (Super.Ct.No. CIVDS1518148) |
| THE WHISKEY BARREL HESPERIA, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Dismissed.

Carrazco Law, Angel Carrazco, Jr., Kent M. Henderson and Christopher L. Holm, for Plaintiff and Appellant.

Hartsuyker, Stratman & Williams-Abrego and J. Michael McClure; Veatch Carlson and Serena L. Nervez, for Defendant and Respondent.

1

## I.

## INTRODUCTION

During a fight between Fred Romero[1] and plaintiff and appellant, Nicholas Montgomery, at The Whiskey Barrel Hesperia, LLC (Whiskey Barrel), Romero gouged out Montgomery's left eye.  Montgomery sued the owner of Whiskey Barrel for negligence and damages.  The jury entered a verdict finding Whiskey Barrel 10 percent liable for negligence because Whiskey Barrel's security guards did not eject Romero from the premises after an initial altercation, which occurred shortly before the fight leading to Montgomery losing his eye.  Because the jury found Montgomery sustained zero noneconomic damages, the trial court granted Montgomery's motion for a new trial, subject to an additur awarding Montgomery $1,000,000 in past and future noneconomic damages.  Whiskey Barrel accepted the additur.  Montgomery appeals the judgment.

Montgomery contends the trial court erred in issuing an additur because there were inadequate damages and the evidence of liability was in sharp conflict.  Montgomery argues that, under such circumstances, the trial court was required to grant a new trial as to all issues.  Montgomery further contends the trial court erred under Code of Civil Procedure section 657[2] by not specifying what evidence it relied upon in issuing the additur.

---

[1]  Romero is not a party to this appeal.

[2]  Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

After this court provided the parties with its tentative decision, the parties settled this matter and Montgomery filed a request for dismissal of this appeal. Without reaching the merits and in exercise of our discretion, we grant Montgomery's request for dismissal and order the appeal dismissed.

## II.

## FACTS

During the evening of Saint Patrick's Day, March 17, 2015, Montgomery, who was 25 years old, went to the Tilted Kilt and had a few beers with his friends. Later, at 10:30 p.m., they joined Miranda Mobley at Whiskey Barrel. A security guard was stationed at the door, checking identification and using a wand to detect weapons. After entering Whiskey Barrel, Montgomery had a couple of beers.

Montgomery testified that, as he and his friends sat at a table at Whiskey Barrel, Fred Romero walked by several times and pulled Mobley's ponytail. Although Montgomery thought Romero's conduct was inappropriate and embarrassed Mobley, Montgomery did not notify the Whiskey Barrel manager or security guards.

Later that evening, after Montgomery returned from the restroom, he found Romero seated at Montgomery's table, drinking beer Montgomery had purchased for his friends. Montgomery testified that he and Romero argued, and then Romero threw beer at Montgomery. In response, Montgomery pushed Romero, which knocked a glass of beer off the table, onto the floor, shattering the glass. Eric Hughes, a Whiskey Barrel security guard, approached and asked what was going on. Montgomery did not respond.

3

Romero walked away, over to the bar. Immediately after the incident, Whiskey Barrel staff began cleaning up.

Because of the mess on the table and glass on the floor, Hughes moved Montgomery and his friends to another nearby table. After Hughes left the area, a friend of Romero's approached Montgomery and apologized for the incident involving Romero. Romero's friend told Montgomery that Mobley and Romero used to date but were now just friends, and that was what they did as friends. Montgomery replied he was very sorry about the incident and felt he had overreacted. Montgomery added that he was unaware of Mobley and Romero's prior relationship. Romero's friend and Montgomery shook hands. Montgomery thought the incident was over.

Montgomery testified that about two minutes later, Romero approached him from behind and struck him in the face with the back of his hand while holding a beer in his other hand. Montgomery reacted by running towards Romero and attacking him, because Romero had just hit him. During the fight between Romero and Montgomery, Romero gouged out Montgomery's left eye. Montgomery testified it felt like he had a dagger in his eye. According to the surveillance video of the incident shown to the jury, Hughes immediately responded within two seconds of the altercation.

Mobley testified she did not recall Romero pulling her ponytail, Montgomery pushing Romero, or Romero striking Montgomery from behind. She recalled getting beer in her face and feeling Romero and Montgomery at her feet.

Romero testified he did not pull Mobley's ponytail and did not know why Montgomery pushed him during the first incident. Romero denied throwing beer at Montgomery. Romero testified he pled guilty to felony battery for injuring Montgomery and acknowledged that he made a bad decision when he slapped Montgomery's face.

Hughes testified he was four or five tables away when he noticed commotion during the first incident. Two individuals at the table got into an argument and were loud. Hughes did not see Montgomery push Romero. He went over to Montgomery's table. There were five people at the table. The people told Hughes they were all friends being rowdy and nothing was going on. They said it was St. Patrick's Day and they were having a good time. Hughes told the group to keep it down. Hughes testified that, two and a half minutes later, during the second altercation, he did not see Romero hit Montgomery's face with his hand. Within seconds after Montgomery responded by attacking Romero, Hughes attempted to break up the fight.

As a result of losing his left eye during the fight, Montgomery had two surgeries to remove the uvea and scrape out everything in the eye socket, leaving the sclera shell. Because Montgomery had to wait for the eye area to heal, it took one year and three months before Montgomery could use a plastic eye prosthesis to fill the eye socket. Neuro-ophthalmologist Dr. Sadun testified that Montgomery could do most things with

5

one eye but had reduced depth perception and reduced peripheral vision, from 180 degrees to 130 degrees. Montgomery was also at risk of getting glaucoma and must be vigilant in taking care of his good eye.

Montgomery testified that people would stare at him and he felt like he looked "weird." The recovery process was painful and he had to get used to the prosthesis. Montgomery now sleeps with the prosthesis and cleans it every morning. Sometimes the prosthesis moves out of place and he is unaware of this unless someone tells him, which is embarrassing. After his eye injury, Montgomery has had to work harder to prove he can do certain tasks during his work as a heavy equipment mechanic. Montgomery also stopped playing softball and riding dirt bikes on a track. His mother testified Montgomery has become less outgoing. After the incident, Montgomery initially had "really, really bad" anxiety. At the time of the trial, it was "not so bad."

Montgomery's security expert, Scott DeFoe, testified that security guards at Whiskey Barrel were required to have valid guard cards through the state Bureau of Security Investigative Services. Hughes's guard card expired in 2005. In DeFoe's opinion, Montgomery and Romero should have been escorted off the premises after the initial incident, when Montgomery pushed Romero. According to DeFoe, Whiskey Barrel failed to properly train their security guards and lacked internal policies requiring removal of patrons from the premises if seen causing a disturbance or fight. DeFoe acknowledged that a sudden assault could have occurred even if Whiskey Barrel had adequate security in place. DeFoe did not observe in the video of the incident any

6

indication Hughes had seen Montgomery push Romero or that Romero pulled Mobley's hair.

Whiskey Barrel's security expert, Chris McGoey, testified that Whiskey Barrel is classified as a restaurant because it serves a full food menu. It was therefore not legally required to have security. Whiskey Barrel opened in November 2014. From that time until the subject incident four months later, there had not been any violence at Whiskey Barrel. McGoey stated that, in his opinion, the risk of an assault or other crime or injury at Whiskey Barrel on March 17, 2015, was very low. Nevertheless, that night Whiskey Barrel had three security guards: one who checked identification at the door; one who covered the left side of the restaurant; and Hughes, who covered the right side of the restaurant. The industry standard for a high risk club was one guard for every 50 patrons. Whiskey Barrel had three guards for 80 patrons the night of the incident. McGoey concluded Whiskey Barrel had adequate security and the security guards responded appropriately to the altercations involving Montgomery and Romero.

McGoey agreed the video did not show Romero throwing a glass of beer at Montgomery before Montgomery pushed Romero during the first incident. Therefore, in McGoey's opinion, Montgomery was the aggressor during the first incident. McGoey testified that, although Hughes did not see Montgomery push Romero, Hughes properly responded when he became aware of the commotion by speaking to the group for about a minute. McGoey concluded Hughes's actions were reasonable. McGoey testified that during the second altercation, when Romero backhanded Montgomery, Romero was the

aggressor.  The video showed that after Romero hit Montgomery, Romero backed up 10 feet and took a stance indicating "come and get me."  Montgomery at that point charged toward Romero.

## III.

## REQUEST FOR DISMISSAL

After we issued a tentative opinion but before holding oral argument, Montgomery requested dismissal of his appeal.

An appellant may not dismiss an appeal as a matter of right.  (*Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1160 [imposing $6,000 sanctions on attorney for unreasonable delay in notifying appellate court that parties had settled and dismissed the underlying case].)  Rather, pursuant to California Rules of Court, rule 8.244(c)(2), "On receipt of a request or stipulation to dismiss, the court *may* dismiss the appeal and direct immediate issuance of the remittitur."  (Italics added.)  Thus, dismissal is discretionary. Here, because the parties have settled this case and will avoid a potential retrial, we grant the request.

IV.

DISPOSITION

Because the parties recently settled this matter and Montgomery filed a request for dismissal of his appeal, Montgomery's request for dismissal is granted and the appeal is ordered dismissed.  Each party is to bear his/its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

RAPHAEL

J.